## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Christine Mooberry, | ) | |
| | ) | Civil Action No. 2:20-cv-00769 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Charleston Southern University, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court upon the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 39), recommending the Court grant in part, deny in part Defendant's motion for summary judgment. (Dkt. No. 34). For the reasons stated below, the Court adopts the R & R as the Order of the Court to deny summary judgment as to Plaintiff's Title VII and EPA claims and grant summary judgment as to Plaintiff's Title IX claims.

**I.    Background**

Christine Mooberry ("Plaintiff") filed this action on February 19, 2020 against her former employer, Charleston Southern University ("Defendant"). (Dkt. No. 1). Plaintiff alleges gender-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, gender-based discrimination and retaliation in violation of Title IX of the Education Amendments of 1972 ("Title IX"), and gender-based disparate pay in violation of the Equal Pay Act of 1963 ("EPA"). (*Id.* at ¶ 9).

In 2013, Defendant hired Plaintiff as the head women's volleyball coach. (Dkt. No. 34-1 at 2; Dkt. No. 37 at 1, 6). Plaintiff alleges that from the start of her employment, she noticed that the administration treated female athletic teams and female coaches differently from male athletic teams and male coaches. (Dkt. No. 37 at 1-2; Dkt. No. 1 at ¶ 46). For example, Plaintiff alleges

1

the Athletic Director, Hank Small, gave preference to the men's basketball team and its male coaches with respect to scheduling gym time and running camps. (Dkt. No. 34-1 at 2-3; Dkt. No. 37 at 2). Plaintiff contends these issues came to a head in July 2015 when Barclay Radebaugh, the men's basketball coach, physically threatened her. (Dkt. No. 37 at 2). Plaintiff maintains Mr. Radebaugh provided a false statement to Mr. Small regarding the incident. (*Id.*).

Plaintiff contends that in August 2016, she began making official written complaints to the Vice President for Business Affairs and Athletics, Luke Blackmon, and to Defendant's Human Resources. (Dkt. No. 34-1; Dkt. No. 37 at 3-4; Dkt. No. 1 at ¶ 68). Plaintiff reported "targeting from [Mr.] Small, Title IX issues, gender culture concerns, gym space, and camp inequities based on gender, [and] bullying by the men's basketball coach," among other gender-based concerns. (Dkt. No. 37 at 3). Plaintiff claims that on May 30, 2017, she sent a document to Mr. Blackmon outlining her complaints about retaliation and gender discrimination regarding "the condescending attitudes and mannerisms toward women," "double standards" between male coaches and female coaches, and discrepancies in pay, among other issues. (*Id.* at 5).

In May 2018, Jeff Barber replaced Mr. Small as the new Athletic Director. (Dkt. No. 34-1 at 4; Dkt. No. 37 at 5). Plaintiff maintains that in June 2018, she met with Mr. Barber to discuss equitable gym time, along with prior issues raised to Mr. Small such as camp opportunities and her relationship with Mr. Radebaugh. (Dkt. No. 34-1 at 4; Dkt. No. 37 at 5-6). Plaintiff contends the issues continued under Mr. Barber's supervision. (*Id.* at 6). Plaintiff continued to inquire regarding scheduling until January 29, 2019. (Dkt. No. 37-5 at 3).

On February 4, 2019, Mr. Barber informed Plaintiff that her employment contract would not be renewed. (Dkt. No. 34-1 at 4; Dkt. No. 37 at 6). Plaintiff alleges that during the meeting, Mr. Barber made discriminatory gender-based comments to Plaintiff about raising children and

coaching at the collegiate level. (Dkt. No. 37 at 6-7). Plaintiff contends at the time she was terminated she was enrolled in Defendant's graduate program for the 2019 spring semester. (Dkt. No. 37 at 1). Defendant hired a male named David McFatrich to replace Plaintiff as the head women's volleyball coach. (Dkt. No. 37-14).

Defendant filed a motion for summary judgment seeking to dismiss all of Plaintiff's claims. (Dkt. No. 34). Plaintiff filed a response in opposition. (Dkt. No. 37). The Magistrate Judge issued an R & R recommending the Court grant Defendant's motion for summary judgment as to Plaintiff's Title IX claims and deny summary judgment as to Plaintiff's Title VII and EPA claims. (Dkt. No. 39). Both parties filed objections to the R & R. (Dkt. Nos. 40; 41). The matter is ripe for the Court's review.

## II. Legal Standard

### A. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *US. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id. quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### B. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). In the absence of any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Both parties filed objections, and the R & R is reviewed *de novo*.

### III.  Discussion

### A. Title VII Claims

4

Upon a careful review of the record and the parties' respective briefing, the Court finds the Magistrate Judge comprehensively analyzed Plaintiff's Title VII discrimination and retaliation and claims to correctly conclude there are issues of material fact as to these claims.

The Magistrate Judge analyzed Plaintiff's Title VII discrimination claim under the *McDonnell Douglas* framework. (Dkt. No. 39 at 9). When a Plaintiff lacks evidence of discrimination, she must satisfy the three-step burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), to prevail under a Title VII claim. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)). Under *McDonnell Douglas*, a Plaintiff must first establish a *prima facie* case of discrimination. Plaintiff can establish a *prima facie* case by demonstrating: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class, or some other evidence giving rise to an inference of unlawful discrimination. *Ferguson v. Waffle House, Inc.*, 18 F. Supp. 3d 705, 719 (D.S.C. 2014).

If Plaintiff can establish a *prima facie* case of discrimination, the burden shifts to Defendant to show "a legitimate, nondiscriminatory" reason for the adverse employment action. *Ferguson*, 18 F. Supp. 3d at 719. If Defendant provides a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts to Plaintiff to demonstrate Defendant's asserted justification is a "mere pretext for its true discriminatory motives." *Id.* To do that, Plaintiff must come forward with evidence showing Defendant's reason for the adverse employment action was false, and that discrimination was the real reason. *Collins v. Charleston Place, LLC*, No. 2:15-cv-4465-PMD-BM, 2017 WL 3167330, at * 2 (D.S.C. July 26, 2017), *aff'd*, 720 F. App'x 710 (4th Cir. 2018).

The Magistrate Judge explained that Defendant assumes a*rguendo* in its brief, that Plaintiff can establish a *prima facie* case of discrimination. (Dkt. No. 39 at 10). The Magistrate Judge

applied the elements of a *prima facie* discrimination case to the record in this case to determine Plaintiff establishes a *prima facie* claim. (*Id.* at fn 5). Defendant does not object to this finding.

As the Plaintiff established a *prima facie* Title VII discrimination claim, Defendant must offer a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant argues that (1) Mr. Barber observed that "[Plaintiff] did not possess the characteristics of a Division I coach"; (2) Plaintiff received negative feedback from some of her team members; and (3) Plaintiff had an unimpressive win-loss record. (Dkt. No. 34-1 at 8-17). Plaintiff contends that Defendant's reasons are pretextual because these reasons were never communicated to Plaintiff during her employment, nor at the time of her termination. (Dkt. No. 37 at 13-14) (citing Dkt. No. 37-4 at 45, 56).

Mr. Barber testified that he did not speak to Plaintiff about her winning percentage and how it could affect her job, or about his purported concerns with Plaintiff's coaching. (Dkt. No. 37-4 at 37; Dkt. No. 34-6 at 20). Mr. Barber testified that he did not document in detail the reasons he terminated Plaintiff during their final meeting. (Dkt. No. 37-4 at 56). On the other hand, Mr. Barber testified that his personal style of handling employees is to "deal with things immediately" as they come up and that he found it important to "document performance issues." (Dkt. No. 37-4 at 21-22). The Magistrate Judge concluded that this evidence is probative of pretext. (Dkt. No. 39 at 11) (citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 647 (4th Cir. 2002) (explaining when an employer offers inconsistent post-hoc explanations for its employment decisions, this is probative of pretext)).

Viewing the evidence in a light most favorable to the non-moving party, the Court agrees with the finding of the Magistrate Judge. Plaintiff provides sufficient evidence to create issues of material fact as to whether Defendant's proffered reasons for terminating her were pretextual. (*Id.*

6

at 10). Defendant's motion for summary judgment is denied as to Plaintiff's Title VII discrimination claim.

The Magistrate Judge analyzed Plaintiff's Title VII retaliation claim under the *McDonnell Douglas* framework. (Dkt. No. 39 at 12). Under this framework, Plaintiff must first make a *prima facie* showing of retaliation by proving that: (1) she engaged in a protected activity; (2) her employer took a materially adverse action against her; and (3) there was a causal link between the two events. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 210 (4th Cir. 2019). To establish the causal connection between the protected activity and alleged retaliation, Plaintiff must establish that the decisionmaker had knowledge Plaintiff engaged in the protected activity and retaliated against her because of that protected activity. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). If Plaintiff can establish a *prima facie* case of retaliation, the burden shifts to Defendant to rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. *Marzett v. Charleston Cty. Sch. Dist.*, No. 2:14-cv-3932-RMG-MGB, 2017 WL 1274254, at * 10 (D.S.C. Jan. 27, 2017), *adopted*, 2017 WL 589110 (D.S.C. Feb. 14, 2017), *aff'd*, 697 F. App'x 186 (4th Cir. 2017). Plaintiff then bears the ultimate burden of proving the proffered reason is pretext for unlawful retaliation. *Id.*

Plaintiff presents sufficient evidence to state a *prima facie* Title VII retaliation claim. Plaintiff engaged in protected activity by making complaints about the unequal treatment she experienced due to her gender. (Dkt. No 37 at 5). Plaintiff continued making complaints and inquiries about scheduling until the end of January 2019. (*Id.* at 5). Plaintiff experienced a materially adverse action when she was terminated in February of 2019. (Dkt. No. 37 at 6). Based on this timeline of events, Plaintiff sufficiently establishes a close temporal proximity between the protected activity and the materially adverse action. *Pascual*, 193 Fed. App'x at 233.

7

Defendant argues the decision to terminate Plaintiff was not retaliatory for the same reasons it was not discriminatory. (Dkt. No. 34 at 21). The Magistrate Judge determined that Plaintiff's Title VII retaliation claim survives summary judgment for the same reasons articulated as to Plaintiff's Title VII discrimination claim. Plaintiff presents sufficient evidence to create issues of material fact as to whether Defendant's proffered reasons for terminating her were pretextual. (Dkt. No. 39 at 14). Defendant's motion for summary judgment as to Plaintiff's Title VII retaliation claim is denied.

### B. Title IX Claims

Upon a careful review of the record and the parties' respective briefing, the Court finds the Magistrate Judge comprehensively analyzed Plaintiff's Title IX claim to correctly determine that the one-year statute of limitations from the South Carolina Human Affairs Law ("SCHAL"), S.C. Code Ann. § 1-13-80(A)(1)(2005), applies to Plaintiff's Title IX claims. The Magistrate Judge correctly determined that Plaintiff's claims are time-barred. (Dkt. No. 39 at 14-15).

Plaintiff objects to the finding of the Magistrate Judge. (Dkt. No. 40). Plaintiff argues the applicable statute of limitations in Title IX cases arising in South Carolina should be modeled after South Carolina's general three-year statute of limitations for personal injury actions, S.C. Code Ann. § 15-3-530. (Dkt. No. 37 at 28; Dkt. No. 40). Plaintiff notes there is no published Fourth Circuit opinion directly on-point. Plaintiff's brief and objections to the R &R discuss the relevant persuasive authorities on this issue at length. (Dkt. No. 37; Dkt. No. 40).

"Title IX does not contain an express statute of limitations . . ." *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 Fed. Appx. 294, 296 n.3 (4th Cir. 2007). "Congress not infrequently fails to supply an express statute of limitations when it creates a federal cause of action." *Reed v. United Transp. Union*, 488 U.S. 319, 323-24 (1989). When this occurs, the United States Supreme Court has "generally concluded that Congress intended that the courts apply the most closely analogous

8

statute of limitations under state law.'" *Wilson v. Garcia*, 471 U.S. 261, 268 (1985); *Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 224 (4th Cir. 1993).

In an unpublished opinion in *Moore v. Greenwood School District No. 52*, the Fourth Circuit dealt with the applicable statute of limitations for Title IX claims that arise in South Carolina. The *Moore* court held that the one-year statute of limitations period found in the SCHAL was the most analogous to Moore's Title IX employment discrimination and retaliation claims asserted against her employer. 195 Fed. App'x 140 (4th Cir. 2006). The *Moore* court reasoned that both Title IX and the SCHAL prohibit discrimination in employment based on sex, age, national origin, or disability. S. C. Code Ann. § 1-13-80(A)(1)(2005). *Id*. at 143.

Less than a year later, the Fourth Circuit in *Wilmink*, stated in a footnote that "circuits to have considered the applicable statute of limitations to Title IX claims have unanimously held that that Title IX borrows the relevant state statute of limitations for personal injury.'" *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 Fed. Appx. 294 295-96, n. 3 (4th Cir. 2007) (citing out-of-circuit authority).[1] Unlike *Moore*, *Wilmink* involved allegations of sexual misconduct by a teacher against a student in a West Virginia school district. *Wilmink*, 214 Fed. Appx. at 295. The *Wilmink* court did not address *Moore* and the applicable statute of limitations was not an issue in *Wilmink*. *Wilmink*, 214 Fed. Appx. at 295-96, n.3.

Considering *Moore*, *Wilmink,* and out-of-circuit authority, district courts within the Fourth Circuit have taken varied approaches on how to apply a state statute of limitations to Title IX cases. The courts tend to draw factual distinctions where appropriate. *See Martin v. Clemson Univ*., 654

---

[1] *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 Fed. Appx. 294 295-96, n. 3 (4th Cir. 2007) (citing *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir. 1989); *Lillard v. Shelby Cnty. Bd. of Educ*., 76 F.3d 716, 729 (6th Cir. 1996); *Egerdahl v. Hibbing Cmty. Coll*., 72 F.3d 615, 618 (8th Cir. 1995); *M.H.D. v. Westminster Schs*., 172 F.3d 797, 803 (11th Cir. 1999)).

9

F. Supp. 2d 410, 420 (D.S.C. 2009) (relying on *Moore* in applying a one-year statute of limitations to a Title IX claim by a professor against her university employer); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 663-64 (D. Md. 2012) (distinguishing its facts involving the sexual harassment of a student from the facts in *Moore* involving an employee-employer dispute, and adopting *Wilmink* to apply the statute of limitations from Maryland's personal injury statute on Title IX claim over the statute of limitations from the Maryland Human Relations Act); *Isioye v. Coastal Carolina Univ.*, No. 4:17-cv-3484, 2018 WL 6682795 (D.S.C. Nov. 30, 2018) (applying South Carolina's personal injury statute of limitations to Title IX claim that was factually predicated on student relationship and sexual misconduct allegations that were more akin to the allegations in *Wilmink* and *Doe*).

In this case, Plaintiff's Title IX claims are based on her employment with Defendant. (Dkt. No. 1 at 16-18).[2] Thus, the Fourth Circuit's decision in *Moore* is the most applicable to the facts at hand. *Moore* considered the issue of which statute of limitations applies to Title IX claims brought by an employee against her employer in South Carolina and held that a one-year statute of limitations applies. *Moore*, 195 Fed. App'x at 140-143. In this case, Plaintiff was informed her contract would not be renewed on February 4, 2019. (Dkt. No. 37 at 7). She filed this civil action on February 19, 2020. (Dkt. No. 1). This is outside the one-year statute of limitations period. Upon a close review of the authorities cited by the parties, the Court agrees with the Magistrate Judge that Plaintiff's Title IX claims are untimely. (Dkt. No. 39 at 16). Defendant's motion for summary judgment is granted as to Plaintiff's Title IX claims.

C. EPA Claims

---

[2] The Magistrate Notes that although Plaintiff was enrolled as a graduate student at the time of her termination, her Title IX claims are clearly employment based. (Dkt. No. 39 at 15, fn 7).

Upon a careful review of the record and the parties' respective briefing, the Court finds the Magistrate Judge comprehensively analyzed the issues to determine there are issues of material fact as to Plaintiff's EPA claims.

To establish an EPA violation, a Plaintiff must make a *prima facie* showing that Defendant paid different wages to an employee of the opposite sex for equal work on jobs requiring skill, effort, and responsibility that are performed under similar working conditions. *U.S. Equal Emp. Opp. Comm'n v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018). Equality under the Act is a demanding threshold requirement. "It requires a comparator to have performed work 'virtually identical' (or . . . 'substantially equal') to the plaintiff's in skill, effort, and responsibility. . . . Similarity is not enough; the Act explicitly distinguishes between the work itself (which must be 'equal') and the conditions of work (which need only be 'similar')." *Spencer v. Virginia State University*, 919 F.3d 199, 203-204. (4th Cir. 2019). If Plaintiff can make this initial showing, the Court shall presume that the pay disparity is based on gender-based discrimination. *Id.* at 203.

The burden then shifts to Defendant to demonstrate that the disparity is justified by: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; or (4) a disparity based on any other factor than sex. *Md. Ins. Admin.*, 879 F.3d at 120. In order to be entitled to summary judgment, Defendant must provide "evidence from which a reasonable factfinder could conclude not simply that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity." *Id.* at 120-121.

Plaintiff establishes a *prima facie* showing Defendant violated the EPA. In her deposition, Plaintiff identified David McFatrich, the male who succeeded her as coach of the women's volleyball team, as her comparator for the purpose of her EPA claim. (Dkt. No. 34-4 at 30-31). Plaintiff testified that she believed she was paid at a lower rate than Mr. McFatrich because he had

11

a better contract that included built-in incentives such an "academic achievement" incentive/bonus. (*Id.* at 31; Dkt. No. 37-14 at ¶ 3.2). Defendant argues that Plaintiff's claim fails because Mr. McFatrich performed additional duties placed in his contract by Mr. Barber that were not required of Plaintiff by virtue of her contract. (Dkt. No. 34-1 at 24-31) (citing Dkt. No. 34-9, at ¶¶ 4.1, 4.3, 4.5, 4.6, 4.7,4.9, 5.2, 6.1; Dkt. No. 34-3 at ¶ 16). Upon a review of the record and in a light most favorable to the non-moving party, the Court finds that Plaintiff was required to perform all the additional duties outlined in Mr. McFatrich's contract. (Dkt. No. 34-5 at 7; Dkt. No. 34-8 at 2-3; Dkt. No. 37-1 at 5; Dkt. No. 37-2 at 2-3; Dkt. No. 37-3 at 3-4; Dkt. No. 37-24 at 3).[3]

After a Plaintiff establishes a *prima facie* case, the Defendant must demonstrate that the disparity in wage is justified. Defendant argues that Mr. Barber's reason for providing additional incentives in Mr. McFatrich's contract was based on a factor other than sex. (Dkt. No. 38 at 8; Dkt. No. 34-1 at 28). Mr. Barber testified that in January of 2019, "any new coaching contracts, any renewals, any contracts at all" received an added incentive bonuses. (Dkt. No. 34-6 at 4-5). Plaintiff argues this is pretext because the added incentives did not actually apply to all coach contracts. (Dkt. No. 37 at 39-40). Plaintiff cites to Anca Dumitrescu's employment contract that was effective during the relevant time frame that does not include the uniform incentives. (Dkt. No. 37-30).

---

[3] Defendant objects to the Magistrate Judge's finding that Plaintiff established a *prima facie* EPA violation sufficient to survive summary judgment. (Dkt. No. 41 at 2-6). Defendant argues Plaintiff has not demonstrated Mr. McFatrich performed work "virtually identical" to the Plaintiff's in skill, effort, and responsibility. *Spencer v. Virginia State University*, 919 F.3d 199 (4th Cir. 2019). For example, Mr. McFatrich's contract required him to perform fundraising, but Plaintiff's testimony she performed fundraising does not establish that she was *required* to do so. (Dkt. No. 4 at 4). This citation to the record demonstrates there are issues of material fact as to whether Plaintiff and Mr. McFatrich performed virtually identical work.

The Magistrate Judge concluded this record demonstrates the existence of issues of material fact as to whether the inclusion of additional incentives in McFatrich's employment contract was occasioned by a factor other than sex. Defendant objects to this finding, arguing that Mr. Barber only added incentives in contracts in entered into after January 1, 2019 or contracts subject to renewal after January 1, 2019. (Dkt. No. 41 at 7; Dkt. No. 34-9; 34-10; 34 -11; 34-12; 34-13; 34-14). Defendant argues that Ms. Dumitrescu's contract was not subject to renewal in 2019, but has since been renewed and includes the added incentives. (Dkt. No. 41 at 7; Dkt. No. 38-1).

Viewing the evidence in a light most favorable to the non-moving party, the Court agrees with the finding of the Magistrate Judge that issues of material fact exist as to whether Defendant's explanation for the inclusion of additional incentives in McFatrich's employment contract was occasioned by a factor other than sex. (Dkt. No. 39 at 18). Defendant's motion for summary judgment as to Plaintiff's EPA claim is denied.

## IV.     Conclusion

For the reasons stated above, the Court **ADOPTS** the R & R as the Order of the Court. (Dkt. No. 39). Defendant's motion for summary judgment is **GRANTED IN PART, DENIED IN PART**. (Dkt. No. 34). Defendant's motion for summary judgment is **DENIED** as to Plaintiff's Title VII and EPA claims. Defendant's motion for summary judgment is **GRANTED** as to Plaintiff's Title IX claims.

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel<br>
Richard M. Gergel<br>
United States District Judge

January 13, 2022
Charleston, South Carolina

13